**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| KEVIN LOPEZ and PATRICK LE,<br><br>   Plaintiffs,<br><br>               v.<br><br>UNITED STATES OF AMERICA,<br><br>   Defendant. | Civil Action No.<br>1:21-cv-00184-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendant United States of America's motion to dismiss or, in the alternative, for summary judgment [ECF 24]. After careful review of the parties' briefing, and with the benefit of oral argument, the Court **GRANTS** the Government's motion for summary judgment and **DENIES AS MOOT** the motion to dismiss.

**I.      Background**

In the early morning hours of October 1, 2017, Plaintiffs' vehicle was rear-ended by Kevin Gotell, who Plaintiffs allege to be an agent of the Federal Bureau of Investigation.[1] Plaintiffs filed suit pursuant to the Federal Tort Claims Act (FTCA) for alleged injuries arising out of this accident. The Government filed its initial motion to dismiss for failure to state a claim, alleging that Gotell was not an

---

1      ECF 24-3, at 5-6.

FBI employee.[2] The Court granted the parties sixty days to complete jurisdictional discovery to determine whether Gotell was acting within the FBI's control during the relevant time period.[3] Now, the Government moves to dismiss or, in the alternative, for summary judgment, arguing that the Court lacks subject matter jurisdiction because Gotell was in fact an employee of the Metropolitan Atlanta Rapid Transit Authority (MARTA), not the FBI, nor was he a "borrowed servant" of the FBI, at the time of the accident.[4]

Gotell began working for MARTA in 1998.[5] Throughout the course of his employment he was assigned various roles, or "special operations."[6] At the time of the accident, Gotell was assigned to an FBI task force—the Joint Terrorism Task Force (JTTF).[7] The task force was created by the FBI in an effort to more effectively prevent, preempt, deter, and investigate terrorist acts.[8] To that end, the FBI collaborated with various state and local agencies, and entered into a

---

[2]  ECF 17.

[3]  ECF 20.

[4]  ECF 24, at 2.

[5]  ECF 24-3, at 6.

[6]  *Id.* at 9–10.

[7]  ECF 24-1, ¶ 7; ECF 27-1, ¶ 13.

[8]  ECF 24-2, at 5.

Memorandum of Understanding (MOU) with each specific agency. The FBI entered into an MOU with MARTA, which allowed for MARTA officers to serve on the FBI task force.[9]

Gotell joined the task force in 2016.[10] As part of his service, Gotell was assigned an FBI vehicle, which was also governed by contract, a Vehicle Use Agreement.[11] For purposes of his task force responsibilities, Gotell was supervised by FBI Supervisory Special Agent Ashley Johnson.[12] He reported to and received assignments from Agent Johnson on a daily basis.[13] According to Gotell, the majority of his work was task-force related, but he did perform tasks for MARTA from time to time.[14] Gotell attended both FBI and MARTA training sessions during his time on the task force.[15]

---

[9]   *Id.*

[10]  ECF 24-3, at 13.

[11]  ECF 24-2, at 22-24.

[12]  ECF 24-3, at 8.

[13]  *Id.*

[14]  *Id.*

[15]  *Id.*

On the evening of September 30, 2017, Gotell attended a counterterrorism training session hosted by MARTA.[16] On his way home from the training Gotell, driving his FBI-issued vehicle, rear-ended a car occupied by Kevin Lopez and Patrick Le. Gotell told Lopez and Le that he was an FBI employee, but did not discuss the details of his task force assignment.[17] Lopez and Le, believing Gotell to be an FBI agent, brought suit against the United States under the FTCA.

## II.     Legal Standard

The Government filed a motion to dismiss for failure to state a claim or for summary judgement in the alternative. Because the Court has considered record evidence in coming to its conclusion, it applies the summary judgement standard. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

---

[16]   *Id*. at 9–10; ECF 27-2, ¶ 12; ECF 24-2, at 28-31.

[17]   ECF 24-3, at 8.

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the court in evaluating summary judgment. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III.   Discussion**

The FTCA provides a cause of action and waives sovereign immunity only "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any *employee* of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1) (emphasis added).[18] So, the Court's jurisdiction over this case turns on the status of Gotell's employment as between the FBI and MARTA. To hold the FBI liable (and thus be properly before the Court), Plaintiffs must establish that Gotell was an FBI employee or "borrowed servant" at the time of the collision.

**A.   Respondeat Superior and the Borrowed Servant Rule**

Generally, when an employee commits an act of negligence within the scope of his or her employment, the employer is liable under traditional principles of respondeat superior. *Hoffman v. Wells,* 260 Ga. 588 (1990). The rule of respondeat superior states that, "[w]hen a servant causes an injury to another, the test to

---

[18] The language of the FTCA provides that liability should be determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Supreme Court has observed that "we have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). Because the accident in this case took place in Georgia, this Court applies Georgia liability principles. *See Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001).

determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master." *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (1979). While the rule is straightforward, its application is not always so, particularly with respect to defining the bounds of the term "employee." The employer-employee relationship is clear where an individual is hired, paid, and directed by a single entity. But Georgia has developed doctrines to govern less-obvious relationships.

For example, the borrowed-servant rule was designed to deal with situations where an employee of one entity takes on, or is assigned to, work for another entity. *Standard Oil Co. v. Anderson*, 212 U.S. 215, 221 (1909). The rule provides that, if a principal lends her agent to another then "the [principal] is not responsible for any negligence of the [agent] committed within the scope of his employment by the other." *Staffing Resources v. Nash*, 218 Ga. App. 525, 526 (1995). For an employee to be deemed a borrowed servant, the evidence must show that "(1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control[;] and (3) the special master had the exclusive right to discharge the servant." *Id*. Furthermore, courts must apply the borrowed servant analysis to only "the occasion when the injury occurred," as each prong relates "only to the *specific task* for which the servants are

loaned." *Fulghum Indus., Inc. v. Pollard Lumber Co.*, 106 Ga. App. 49, 52 (1962). The question here is which entity—the FBI or MARTA—controlled Gotell at the time of the collision.

### 1. The FBI is not liable under the theory of respondeat superior.

Plaintiffs ask this Court to find the FBI liable under a traditional respondeat superior theory. It is their contention that Gotell was an employee (not a borrowed servant) of the FBI. The MOU, they argue, speaks to the scenario presented in this case: Where a task force officer injures another party while operating pursuant to the duties of the task force mission, he is considered an FBI employee.[19] Plaintiffs aver that, because the training Gotell attended on the night of the accident was a counterterrorism training, his attendance was in furtherance of the task force mission, thus making him an FBI employee per the MOU.[20]

The Government disagrees. During oral argument, the Government clarified that the MOUs it enters into with state and local agencies carefully outline when the United States agrees to defend alleged negligent or wrongful acts of non-government employees. It consents to suit under the FTCA where a task force

---

[19]   ECF 27, at 3.

[20]   *See generally*, ECF 27.

member is negligent while "acting within the course and scope of his or her official duties and assignments pursuant to this MOU."[21] In those cases, and only those cases, task force members may be considered employees of the U.S. government as defined by 28 U.S.C. § 2671.[22] In other words, the MOU embraces the *borrowed servant* doctrine and carefully dictates the bounds of when it does and does not consider a task force member an employee. If Gotell is considered a traditional employee of the FBI, it argues, that eliminates any relationship he has with MARTA.

In this case, the MOU and vehicle-use agreement are aligned with the common law this Court must apply. In multiple places, the MOU cautiously draws the line between embracing liability where task force members are acting within the "course and scope of [their] official duties and assignments pursuant to the MOU"[23] and where they are operating outside the terms of the MOU. It states that "financial and civil liability . . . for the acts and omissions of each employee

---

[21] ECF 24-2, at 18.

[22] "During the period of assignment, a State or local government employee on detail to a Federal agency is deemed an employee of the agency for the purpose of . . . the Federal Tort Claims Act."

[23] ECF 24-2, at 18.

detailed to the JTTF remains vested with his or her employing agency"[24] and "[l]iability for any negligent or willful acts of JTTF members undertaken outside the terms of this MOU will be the sole responsibility of the respective employee and agency involved."[25] The MOU also notes that MARTA will continue to be responsible for "pay, overtime, leave, performance appraisals, and other personnel matters."[26]

Turning now to the Vehicle Use Agreement, Plaintiffs rely heavily on this agreement in arguing that Gotell was an FBI employee. Specifically, they cite the portion reading "[t]he operator shall use the vehicle only for official purposes related to performance of duties assigned under the program. The operator shall not use the vehicle for personal use or any other use not directly related to activities authorized within the mission of the program."[27] However, the portion of the MOU pertaining to the vehicle use states, "[a]ny civil liability arising from the use of an FBI-owned or leased vehicle by a Participating Agency task force member while engaged in any conduct other than his or her official duties and

---

[24]  *Id.* at 17.

[25]  *Id.* at 19.

[26]  *Id.* at 8.

[27]  *Id.* at 22.

assignments under this MOU shall not be the responsibility of the FBI or the United States."[28] Ultimately, while the MOU and Vehicle Use Agreement speak to the relationship between the FBI and MARTA, they do not—and cannot— definitively answer common-law questions. In fact, the contracts themselves require this Court to determine whether Gotell was acting pursuant to task force or MARTA duties on the night of the accident.

The Court finds that, while Gotell served on an FBI task force, he was employed by MARTA at all relevant times. Gotell was hired by MARTA and was designated to various groups over the course of his employment. During his task force assignment, MARTA remained responsible for Gotell's pay, overtime, leave, performance appraisals, and other personnel matters. To hold that Gotell was an employee of the FBI would render the borrowed servant exception, and the carefully constructed language in the MOU and Vehicle Use Agreement, meaningless. To the extent that the MOU and Vehicle Use Agreements help define the employee-employer relationship, they require this Court to apply the borrowed servant analysis.

---

[28] *Id.* at 15.

### 2. Gotell was not a borrowed servant of the FBI at the time of the accident.[29]

As noted above, the borrowed servant rule was created to address situations where the official employee-employer relationship does not tell the whole story. Though a closer call, Gotell's relationship with the FBI on the night of the collision does not fall under the borrowed servant doctrine for three reasons: (1) the task force did not have complete control and direction of Gotell for the occasion; (2) MARTA did have control; and (3) the task force did not have the exclusive right to discharge Gotell.

*Garden City v. Herrera*, 329 Ga. App. 756 (2014), is instructive as it presents a remarkably similar factual scenario to the instant case. There, the plaintiff was injured when a vehicle driven by a city police officer assigned to the county task force crashed into her. The *Herrera* Court determined that, at the time of the accident, the city employee was a borrowed servant of the county. That court relied on both the contract and surrounding facts, which all demonstrated that the city had no control whatsoever over the officer at the time of the accident. The agreement in that case "expressly addressed all three prongs of the borrowed-

---

[29] During oral argument, Plaintiffs abandoned their argument that Gotell was a borrowed servant of the FBI. The Court will undergo the borrowed servant analysis nonetheless.

servant rule." *Id*. at 760. Particularly relevant was the fact that the officer was driving from one county operation to another pursuant to orders given by his county supervisor. *Id*. at 761. Additionally, the city had "no control whatsoever over the hours that [the officer was] assigned nor what he [did] during those hours." *Id*. The court found that the officer's relationship with the county satisfied all three prongs of the borrowed servant analysis.

Before applying the borrowed servant test, the Court must define the scope of the event to which it applies. This is because, as referenced previously, the test "requires that the special or borrowing master have complete control and direction *only for the occasion at issue*." *Six Flags Over Ga., Inc. v. Hill*, 247 Ga. 375, 377 (1981). As the Georgia Supreme Court has noted, an employee "may become the other's servant as to some acts and not as to others." *Id*. In this case, Gotell's general assignment to the task force is somewhat irrelevant—the Court looks only to the scope of the counterterrorism training he attended on the night of the accident.

The first two elements of the borrowed-servant analysis focus on which principal had *exclusive and complete* control over the employee for the occasion at issue. The actual events leading up to and surrounding the collision do not suggest that the FBI had *any*—let alone exclusive—control over Gotell. The counterterrorism training he attended was a MARTA training, hosted by MARTA,

for MARTA employees. Gotell's FBI supervisor did not require that he attend the event, nor did Gotell ask the FBI's permission to attend the event.[30] While he informed his FBI supervisor that he was planning to attend and even invited her to join, he did not need her sign-off. According to Agent Johnson, she was not even aware of the training until Gotell informed her about his accident the next day.[31] Nor did Agent Johnson have any authority to dismiss Gotell from the training.[32]

Plaintiffs run into serious problems when justifying Gotell's presence at the training that night. They admit that "Gotell was required to attend the MARTA training regardless, but decided to go as a [task force officer] . . . ."[33] The evidence, and logic, contradict that assertion. If Gotell was required to attend the training regardless of whether he was assigned to the task force, it cannot be that he attended on behalf of the FBI pursuant to task force objectives. As Gotell stated in his deposition, "as a MARTA police officer it is required for all of us to participate in the terrorism exercise every year, all MARTA police officers regardless [of] where [they] are assigned have to participate in that terrorism exercise every

---

[30] ECF 24-2, ¶ 11.

[31] *Id.* ¶ 12.

[32] *Id.* ¶ 15.

[33] ECF 27, at 13.

year."[34] Certainly, counterterrorism training might collaterally assist him in his task force role, but that is not a factor in the analysis. Plaintiffs argue in conclusory fashion that Gotell attended the training in his role as a task force officer but cannot articulate any actions he took or anything at all that was different about his attendance as a task force officer as opposed to a MARTA officer.[35] Furthermore, Agent Johnson testified that when Gotell wanted to "attend other MARTA events on behalf of the [task force], he sought and received written permission from"[36] her. He did not do so for the September 30 training.[37] Nor did Gotell seek overtime reimbursement from the FBI for his attendance at this event, as he normally did when working on behalf of the task force outside of normal work hours. The undisputed evidence shows that Gotell attended the MARTA training pursuant to his employment by MARTA. Accordingly, it was MARTA and not the FBI that had control over Gotell on the night of the accident.

Finally, the third prong of the test: the special master (the FBI) did not have the exclusive right to discharge the servant (Gotell). Again, the Court must apply

---

[34]   ECF 24-3, at 10.

[35]   *See* ECF 24-3, at 9.

[36]   ECF 24-2, ¶ 16.

[37]   *Id.* ¶ 17.

the test to the narrow event at issue. While Agent Johnson had the exclusive right to discharge Gotell from the task force, that is not especially relevant here. She had no authority to dismiss Gotell from the training he attended that evening.[38] In fact, as noted above, Gotell did not even need Agent Johnson's permission to be there in the first place and, according to Agent Johnson, she was not aware that he was in attendance until the following day. What's more, Gotell's presence at the training was required *regardless* of whether he was assigned to the task force. Accordingly, Plaintiffs cannot legitimately argue that Agent Johnson had the exclusive right to discharge Gotell from the event giving rise to this case. Gotell might very well have been a borrowed servant for the majority of the time that he was working for the task force, but on the night of the accident—the only relevant occasion for purposes of this suit—he was not.

Because Gotell was neither an employee nor a borrowed servant of the FBI, Plaintiffs cannot bring suit against the United States under the FTCA.

---

[38] *Id.* ¶ 15.

### B.       Fundamental Fairness

With the jurisdictional analysis behind us, a note about fundamental fairness is in order. Immediately after the accident, Gotell told both Plaintiffs that he was an FBI employee. At no point were Plaintiffs told by the FBI, MARTA, Gotell, or anyone else that Gotell was not actually an FBI employee. In fact, according to counsel for Plaintiffs, the Government's initial motion to dismiss in this case marked the first time Plaintiffs learned that Gotell was not an FBI employee. Even then, the FBI did not explain or elaborate that MARTA was Gotell's employer, just that the FBI was not. The Government cannot in good conscious suggest that Plaintiffs should have—or could have—known that any entity besides the FBI was potentially liable. And to that end, it strikes this Court as fundamentally unfair that Plaintiffs, through no significant fault of their own, are precluded from recovering for injuries suffered at the hands of an FBI task force officer driving an FBI vehicle and holding himself out as an FBI employee. The United States is uniquely situated as a civil litigant to do what's right. And this isn't right.

## IV. Conclusion

The Court **GRANTS** the Government's motion for summary judgment and **DENIES AS MOOT** its motion to dismiss [ECF 24]. The Clerk of Court is directed to enter judgment in favor of the United States and close this case.

**SO ORDERED** this 27th day of September, 2023.

Steven D. Grimberg
United States District Court Judge